2024-1585

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

In re: GESTURE TECHNOLOGY PARTNERS, LLC
*Appellant*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in *Ex Parte* Reexamination
Control No. 90/014,902.

**Brief for the Appellee - Director of the
United States Patent and Trademark Office**

FARHEENA Y. RASHEED
*Solicitor*

AMY J. NELSON
*Senior Counsel for Patent Policy and
Litigation*

JUSTIN BOVA
PETER J. SAWERT
*Associate Solicitors*

Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
(571) 272-9035

*Attorneys for the Director of the United
States Patent and Trademark Office*

September 4, 2024

## Representative Claims of U.S. Patent No. 8,194,924

**1.**     A *handheld device* comprising:

a housing;

a computer within the housing;

a first camera oriented to view a user of the handheld device and having a first camera output; and

a second camera oriented to view an object other than the user of the device and having a second camera output, *wherein the first and second cameras include non-overlapping fields of view*, and wherein the computer is adapted to perform a control function of the handheld device based on at least one of the first camera output and the second camera output.

**2.**     The handheld device of claim 1 wherein the handheld device comprises a *mobile phone*.

**6**.     The handheld device of claim 1 wherein *the computer is operable to determine a gesture based on at least one of the first camera output and the second camera output.*

**7**.     The handheld device of claim 1 wherein *the computer is operable to determine a facial expression based on at least one of the first camera output and the second camera output.*

**8**.     The handheld device of claim 1 wherein *the computer is adapted to determine at least one of the position and the orientation of the object based on the second camera output.*

Appx176-177 (disputed limitations emphasized).

# **TABLE OF CONTENT**

I.    Statement of the Issue ....................................................... 1

II.   Statement of the Case ...................................................... 5

    A.   The '924 Patent: A handheld device comprising two cameras and a computer that can control some function of the handheld device ................................ 5

    B.   The Prior Art ......................................................... 7

        1.   Liebermann: electronic communication devices comprising multiple cameras. ......................... 7

        2.   Sears: an electronic reading system controlled using hand gestures captured by cameras. ................... 9

    C.   The Board's Decision ............................................. 10

III.  Summary of the Argument ............................................ 16

IV.   Argument ................................................................ 20

    A.   Standard of Review ............................................... 20

    B.   Substantial Evidence Supports the Board's Determinations That Claims 1 and 2 Are Anticipated By, or Would Have Been Obvious Over, Liebermann ....................................................... 22

        1.   Substantial evidence supports the Board's finding that Liebermann is analogous art. .................. 24

            a.   Liebermann is analogous art under the field-of-endeavor prong ..................................... 25

            b.   Liebermann is analogous art under the reasonably-pertinent prong ................................ 27

        2.   The Board correctly construed "handheld device" in claim 1 as limiting the device's size instead of how it is used. ............................................. 29

        3.   Liebermann's "cellular telephone device" meets the "handheld device" limitation of claim 1. ......................................................... 33

i

4.    Liebermann discloses or teaches the "first and second cameras" with "non-overlapping fields of view" limitation of claim 1. .........................37

    a.    Liebermann's "more than one camera" with non-overlapping camera angles meets the cameras with "non-overlapping fields of view" limitation. ...................................38

    b.    Alternatively, including a "second camera" would have been obvious. ...................................42

5.    The Board correctly determined that Liebermann discloses a "mobile phone" as recited in claim 2. ........................................44

    a.    The Board correctly construed "mobile phone" in claim 2 as inclusive of mobile phones for deaf users. .........................44

    b.    Substantial evidence supports the Board's finding that Liebermann's "cellular telephone device" meets the "mobile phone" limitation of claim 2. .........................46

C.    The Board Correctly Determined That Claims 6, 7, and 8 Would Have Been Obvious Over the Combination of Liebermann and Sears ................................48

1.    Substantial evidence supports the Board's finding that Sears is analogous art. ...........................50

    a.    Sears is analogous art under the field-of-endeavor prong. ...................................51

    b.    Sears is analogous art under the reasonably-pertinent prong. ...............................52

2.    Claim 6 would have been obvious over Liebermann and Sears. ...................................54

3.    Liebermann teaches the "operable to determine a facial expression" limitation of claim 7. ........................................62

       4.     Liebermann teaches the "computer is adapted to determine at least one of the position and the orientation of the object" limitation of claim 8. ......................................................................... 63

   D.   The Board Correctly Determined That the Reexamination Request Raised a Substantial New Question (SNQ) of Patentability .......................................... 65

   E.   GTP's Skeletal Challenge of The Board's Jurisdiction to Reexamine an Expired Patent is Wrong.................................................................................... 65

V.   Conclusion...................................................................................... 68

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Airbus S.A.S. v. Firepass Corp.*,
    941 F.3d 1374 (Fed. Cir. 2019) ........................................... 20

*In re Applied Materials, Inc.*,
    692 F.3d 1289 (Fed. Cir. 2012) ........................................... 58

*In re Bayer Aktiengesellschaft*,
    488 F.3d 960 (Fed. Cir. 2007) ............................................. 21

*In re Berg*,
    320 F.3d 1310 (Fed. Cir. 2003) ...................................... 57, 58

*Beteiro, LLC v. DraftKings Inc.*,
    104 F.4th 1350 (Fed. Cir. 2024) .......................................... 61

*In re Bigio*,
    381 F.3d 1320 (Fed. Cir. 2004) ...................................... 24, 26

*Bostock v. Clayton Cnty.*,
    140 S. Ct. 1731 (2020) ......................................................... 66

*Comaper Corp. v. Antec, Inc.*,
    596 F.3d 1343 (Fed. Cir. 2010) ........................................... 33

*Consol. Edison Co. v. NLRB*,
    305 U.S. 197 (1938) .............................................................. 21

*In re CSB-Sys. Int'l, Inc.*,
    832 F.3d 1335 (Fed. Cir. 2016) ...................................... 29, 67

*Edgewell Pers. Care Brands, LLC v. Munchkin, Inc.*,
    998 F.3d 917 (Fed. Cir. 2021) ............................................. 32

*Estee Lauder, Inc. v. L'Oreal, S.A.*,
    129 F.3d 588 (Fed. Cir. 1997) ...................................... *passim*

iv

*In re Express Mobile, Inc.*,
   2024 WL 2747287 (Fed. Cir. May 29, 2024) ...................................... 67

*In re Gartside*,
   203 F.3d 1305 (Fed. Cir. 2000) ...................................................... 20, 21

*Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*,
   655 F.3d 1291 (Fed. Cir. 2011) ............................................................. 67

*In re Gleave*,
   560 F.3d 1331 (Fed. Cir. 2009) .............................................................. 40

*In re Google Tech. Holdings LLC*,
   980 F.3d 858 (Fed. Cir. 2020) ......................................................... 39, 44

*HP v. Bausch & Lomb Inc.*,
   909 F.2d 1464 (Fed. Cir. 1990) .............................................. 32, 41, 64

*Impax Labs. Inc. v. Lannett Holdings Inc.*,
   893 F.3d 1372 (Fed. Cir. 2018) ............................................................. 56

*In re Inland Steel Co.*,
   265 F.3d 1354 (Fed. Cir. 2001) ............................................................. 57

*Intellicall, Inc. v. Phonometrics, Inc.*,
   952 F.2d 1384 (Fed. Cir. 1992) ....................................................... 44, 45

*In re Jolley*,
   308 F.3d 1317 (Fed. Cir. 2002) ....................................................... 21, 60

*King v. Gallun*,
   109 U.S. 99 (1883) .................................................................................. 37

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007) ................................................................................ 43

*Liebel–Flarsheim Co. v. Medrad, Inc.*,
   358 F.3d 898 (Fed. Cir. 2004) .............................................................. 58

*Markman v. Westview Insts., Inc.*,
   52 F.3d 967 (Fed. Cir. 1995) ................................................................ 30

*In re Merck & Co., Inc.*,
  800 F.2d 1091 (Fed. Cir. 1986) .......................................................... 63

*In re O'Farrell*,
  853 F.2d 894 (Fed. Cir. 1988) ............................................................ 60

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
  584 U.S. 325 (2018) ............................................................................ 66

*PAR Pharm., Inc. v. TWI Pharms., Inc.*,
  773 F.3d 1186 (Fed. Cir. 2014) .......................................................... 20

*In re Paulsen*,
  30 F.3d 1475 (Fed. Cir. 1994) ...................................................... 45, 46

*Pfizer, Inc. v. Apotex, Inc.*,
  480 F.3d 1348 (Fed. Cir. 2007) .......................................................... 60

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ...................................................... 29, 33

*In re Rambus, Inc.*,
  753 F.3d 1253 (Fed. Cir. 2014) .......................................................... 67

*SmithKline Beecham Corp. v. Apotex Corp.*,
  439 F.3d 1312 (Fed. Cir. 2006) .............................................. 33, 36, 63

*Spectra-Physics, Inc. v. Coherent, Inc.*,
  827 F.2d 1524 (Fed. Cir. 1987) .......................................................... 37

*In re Swanson*,
  540 F.3d 1368 (Fed. Cir. 2008) .......................................................... 21

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
  574 U.S. 318 (2015) ............................................................................ 20

*Thaler v. Vidal*,
  43 F.4th 1207 (Fed. Cir. 2024) ........................................................... 66

*Thorner v. Sony Computer Ent. Am. LLC*,
  669 F.3d 1362 (Fed. Cir. 2012) .......................................................... 30

*In re Uhlig,*
    376 F.2d 320 (C.C.P.A. 1967) ............................................................. 36

*Universal Camera Corp. v. NLRB,*
    340 U.S. 474 (1951) ........................................................................... 21

*In re Van Geuns,*
    988 F.2d 1181 (Fed. Cir. 1993) .......................................................... 30

*In re Vivint, Inc.,*
    14 F.4th 1342 (Fed. Cir. 2021) ........................................................... 65

*In re Watts,*
    354 F.3d 1362 (Fed. Cir. 2004) .......................................................... 20

*In re Wood,*
    599 F.2d 1032 (CCPA 1979) .............................................................. 27

## Statutes

5 U.S.C. § 706(2)(E) ................................................................................ 21

35 U.S.C. § 286 ........................................................................................ 67

35 U.S.C. § 302 ............................................................................ 4, 66, 67, 68

## Other Authorities

37 C.F.R. § 1.510(a) .......................................................................... 66, 67

## STATEMENT OF RELATED CASES

The Director is not aware of any other appeal from the Patent Trial and Appeal Board ("the Board") of the United States Patent and Trademark Office ("USPTO") in connection with Reexamination No. 90/014,902 that has previously been before this Court. The Director is aware of related cases listed in Appellant's statement of related cases. The Director is also aware of the follow cases pending in this Court involving related patents that may directly affect, or be directly affected by, this Court's decision in the pending appeal:

*Gesture Technology Partners, LLC v. Unified Patents*, LLC, No. 23-1444 (Fed. Cir.);

*Gesture Technology Partners, LLC v. Apple Inc.*, No. 23-1463 (Fed. Cir.) (Gesture raises a similar issue regarding the USPTO's jurisdiction);

*Apple Inc. v. Gesture Technology Partners, LLC*, No. 23-1475 (Fed. Cir.);

*In re Gesture Technology Partners, LLC*, No. 24-1037 (Fed. Cir.) (Gesture raises issues regarding the same prior art at issue in this appeal and the USPTO's jurisdiction); and

*In re Gesture Technology Partners, LLC*, No. 24-1038 (Fed. Cir.) (Gesture raises issues regarding the same prior art at issue in this appeal and the USPTO's jurisdiction).

## I.     STATEMENT OF THE ISSUE

Representative claim 1, the only independent claim, of Gesture Technology Partners, LLC's ("GTP's") U.S. Patent No. 8,194,924 ("the '924 Patent") is directed to a "handheld device" comprising (1) two cameras with "non-overlapping fields of view" and each with their own output, (2) a housing, and (3) a computer that controls a function of the "handheld device" depending on the camera output(s). Dependent claim 2 further requires that the "handheld device" comprises a "mobile phone."

Finding nothing to limit the term in the specification, the Board construed "handheld device" in claim 1 as having its ordinary meaning, consistent with a dictionary definition, of a device small enough to be used while being held in the hand. The Board also construed "mobile phone" in claim 2 to include mobile phones for the hearing impaired.

Under those constructions, the Board found claims 1 and 2 anticipated by or obvious in view of Liebermann. The Board found that Liebermann's "Cellular Telephone Device" for deaf persons is a "handheld device" (and "mobile phone") small enough to be used while being held. Regarding the first and second cameras with "non-overlapping fields of view" limitations, the Board found Liebermann

1

teaches its device comprises "more than one camera" and each covers a "separate angle" and operates independently without overlapping fields of view. These cameras, the Board found, control the handheld device's function based on the camera output(s) and thus teach the "perform a control function" limitation. To the extent that Liebermann does not expressly recite a "second" camera, the Board first found Liebermann available as an obviousness reference because it is analogous art to the '924 Patent by being in the same field of endeavor (input devices for optically sensing a human input from human positions or orientations), and being reasonably pertinent to the problem to be solved by the '924 Patent (optically sensing human positions or orientations and performing a function based on the sensing). The Board then agreed with the Examiner that it would have been obvious to use a second camera to improve the device's performance.

Representative claim 6 further requires that the handheld device's on-board computer "be operable to determine a gesture" based on a camera output, while claim 7 requires it "be operable to determine a facial expression." And dependent claim 8 further requires that the

handheld device's on-board computer "is adapted to determine" a position or orientation of an object based on the second camera's output.

The Board determined claims 6, 7, and 8 would have been obvious over Liebermann and Sears. For reasons similar to its Liebermann analysis, the Board found that Sears is analogous art to the '924 Patent. Regarding claim 6, the Board determined that it would have been obvious to modify Liebermann's device to house an on-board computer to control functions based on the camera output, rather than using an off-site "central processing facility," given that Sears evidences that such a simple substitution could be done with predictable results. Regarding claim 7, the Board found Liebermann's device is "operable to determine a facial expression" and thus rejected GTP's arguments attacking Sears. Regarding claim 8, the Board noted GTP did not dispute Liebermann's device is capable of determining "position and the orientation" of an object. It then rejected GTP's argument that the "object" in Liebermann is "gloves" worn by a user and thus not an object "other than the user" as recited in claim 1.

The Board also rejected GTP's challenges to the order granting the reexamination of the '924 Patent. In particular, the Board found

that Liebermann raises a substantial new question (SNQ) of patentability by teaching key features missing from the prior art cited during the '924 Patent's original prosecution. The Board additionally determined that the USPTO had jurisdiction to reexamine the '924 Patent although it was expired because the patent can still be enforced for past damages and 35 U.S.C. § 302 states a reexamination request may be filed "at any time."

The issues on appeal are:

(1) Whether the Board correctly construed claims 1 and 2 and whether substantial evidence supports its findings that these claims are anticipated by or obvious in view of Liebermann;

(2) Whether substantial evidence supports the Board's findings that claims 6, 7, and 8 would have been obvious over Liebermann in view of Sears;

(3) Whether the Board correctly determined that Liebermann presented an SNQ and that it has jurisdiction over reexaminations for expired patents.

This Court should answer each of the questions in the affirmative and affirm the Board's decision.

## II.   STATEMENT OF THE CASE

This appeal arises from the reexamination of all claims (claims 1-14) of the '924 Patent (Reexamination Control No. 90/014,902). The Board affirmed the Examiner's rejections of claims 1-5 and 13 as anticipated by or obvious over Liebermann,[1] claims 6-10 and 12 as obvious over Liebermann and Sears,[2] and claims 11 and 14 as obvious over Liebermann and other prior art. Appx1-44; Appx1040-1084; Appx893-958. GTP then appealed to this Court.

### A.   The '924 Patent: A handheld device comprising two cameras and a computer that can control some function of the handheld device

The '924 Patent discloses "simple input devices" comprising cameras to sense inputs used to control some function or output of a computer. Appx140(Abstract), Appx164(2:6-23). The specification describes including a camera on already-known devices to add functionality, e.g., to "take images of things," "determine datums on things," or "automatically read things." Appx169(11:65-12:12);

---

[1] U.S. Patent No. 5,982,853 ("Liebermann"). Appx1247-1271.
[2] U.S. Patent No. 6,115,482 ("Sears"). Appx1273-1294.

Appx170(13:20-28). One embodiment comprises a "hand held computer" with two optionally-rotatable cameras that can view and obtain images of: a user's facial expression, a user's gestures or fingers for communicating via sign language, and objects held in a user's hands. Appx176(25:40-63; 26:25-27); Appx163(Fig. 18). Figure 18 depicts a "handheld computer module 1901" with cameras 1910 and 1902, which can rotate around axis 1905 and face another direction as shown below in dotted-line 1902a. Appx163(Fig. 18); Appx176(25:40-66).



Independent claim 1 recites:

1. A handheld device comprising:

a housing;

a computer within the housing;

a first camera oriented to view a user of the handheld device and having a first camera output; and

a second camera oriented to view an object other than the user

of the device and having a second camera output, wherein the first and second cameras include non-overlapping fields of view, and wherein the computer is adapted to perform a control function of the handheld device based on at least one of the first camera output and the second camera output.

Appx176(26:54-65).

Claim 2 depends on claim 1 and further requires that the "handheld device" comprises a "mobile phone." Appx176(26:66-67). Claims 6, 7, and 8 also depend on claim 1 and recite:

6. The handheld device of claim 1 wherein the computer is operable to determine a gesture based on at least one of the first camera output and the second camera output.

7. The handheld device of claim 1 wherein the computer is operable to determine a facial expression based on at least one of the first camera output and the second camera output.

8. The handheld device of claim 1 wherein the computer is adapted to determine at least one of the position and the orientation of the object based on the second camera output.

Appx177(27:7-14).

## B.    The Prior Art[3]

### 1.    Liebermann: electronic communication devices comprising multiple cameras.

Liebermann discloses an electronic communications system, or

---

[3] The discussion of the prior art is limited to Liebermann and Sears because GTP's arguments before the Board centered on those references.

telephone, for enabling a deaf person to communicate with another person using sign language. Appx1247(Abstract); Appx1264(1:1-14). The telephone can have multiple cameras to capture and transfer a user's movements, and a display screen to view signing motions or communications from another person on a call. Appx1247(Abstract); Appx1253(Fig. 6); Appx1265(3:59-67); Appx1266(5:61-67); Appx1270(13:4-15).

Liebermann's Figure 6 embodiment shows a cellular telephone with an LCD display panel **14** and a video camera **10** that can "record the signing movement of the hands and fingers and body and facial motions and expressions" of a deaf person.



FIG. 6

Appx1253(Fig. 6); Appx1266(5:62-6:6). Although the Figure 6

embodiment shows only one camera, the device can use "more than one camera" where each camera operates independently of the other and covers a separate camera angle that "may or may not" overlap with the other camera's angle. Appx1270(13:4-16).

### 2. Sears: an electronic reading system controlled using hand gestures captured by cameras.

Sears discloses an electronic system that can be controlled using "manual gestures" or "hand gestures," and that can help "reading-disabled people to read, help[] children learn to read, and [can have applications] as a data input device." Appx1273(Abstract); Appx1281(3:19-21; 3:52-57). The electronic reading system uses cameras to capture images of text and to recognize a user's gestures to convert the text into spoken words based on the user's gestures. Appx1281(4:1-14); Appx1284-1285(10:16-11:14); Appx1288(17:55-58). Sears teaches that using multiple cameras can improve the system's performance and provide larger fields of view. Appx1273(Abstract); Appx1287(15:22-34); Appx1288(18:25-32).

Sears's computer system and cameras can all be "placed within a common housing." Appx1282-1283(6:58-7:23); Appx1288(18:9-18). Sears teaches using known processors, such as Intel Pentium or a compatible

9

chip with sufficient speed, to perform the system's functions and interact with the imaging systems. Appx1283(7:1-23).

### C.    The Board's Decision

The Board affirmed the Examiner's rejections of claims 1-14 as either anticipated by or obvious over the prior art. Appx1-43. Specifically, the Board affirmed the Examiner's rejections of claims 1-5 and 13 as anticipated by, and obvious over, Liebermann, claims 6-10 and 12 as obvious over Liebermann and Sears, and claims 11 and 14 as obvious over Liebermann and other prior art. Appx1-43; Appx7 (adopting the Examiner's final rejection and Answer (Appx893-958; Appx1040-1084)).

Before addressing the merits of the Examiner's rejections, the Board construed "handheld device" in claim 1 and "mobile phone" in claim 2. The Board construed "handheld device" as "a size requirement that the device [is] small enough to be used while being held in the hand or hands." Appx9. This construction relied on a dictionary definition that was consistent with GTP's argument for the term. *Id.* For the "mobile phone" term in claim 2, the Board rejected GTP's "myopic view" that it excludes mobile phones for deaf persons as unsupported by the intrinsic

and extrinsic evidence. Appx12. The Board therefore construed "mobile phone" as inclusive of mobile phones for the hearing impaired. *Id.*

Regarding the rejection of claims 1-5 and 13 as anticipated by or obvious over Liebermann, the Board designated independent claim 1 as representative and noted that GTP only separately argued claims 1 and 2. Appx4. The Examiner found that Liebermann anticipates or renders obvious each of the limitations of claims 1 and 2. Appx912-921. Specifically, the Examiner found Liebermann's "portable transmitter/receiver telephone" or "cellular phone" is a "mobile phone" that, in conjunction with a computer system and cameras, can capture a user's hand gestures or facial expressions, convert, process, and transmit the communication to a system, translate or convert the communication to text, and display it to another user. Appx914-917; Appx919. The Examiner also found Liebermann discloses using two cameras, each (1) covering a separate camera angle and operating independently of the other to capture objects/motions/gestures, and (2) able to control the handheld device's function based on the camera output(s). Appx915-916; Appx918. As an example, one camera can recognize a user's glove for signing, and the other, configured to cover a separate angle and operate

11

independently, can recognize the user's other glove or another object. Appx916-917 (citing Appx339-480 at Appx389-391). The Examiner alternatively found that a skilled artisan would have been motivated to use a second camera to more accurately and effectively communicate via sign language and to improve the device's operational efficiency. Appx917. According to the Examiner, this would amount to no more than using a known technique to improve a similar device in the same way as known in the art. Appx917-918.

Regarding the rejection of claims 6-10 and 12 as obvious over Liebermann in view of Sears, the Board designated claims 6 and 8 as representative and noted that GTP only separately argued claims 6, 7, and 8. Appx4. The Examiner found that (1) Liebermann discloses all the claim limitations except for an on-board computer to perform the functions based on camera output, Appx922-923, (2) Sears is an example of an on-board computer/processor to achieve the functions based on camera output, Appx923-924, and (3) using an on-board computer/processor in Liebermann would have been obvious to a skilled artisan, Appx924-925. The Examiner found a skilled artisan would have been motivated to process the camera outputs locally (on board) for faster

real-time processing, to save time, and to increase operational efficiency. Appx924-925. In addition, the Examiner found that the claimed invention required only a simple substitution of one known method for another to obtain predictable results to achieve those benefits. Appx925.

The Board considered each of GTP's arguments, but found them unpersuasive.

***First***, the Board rejected GTP's argument that Liebermann's device—called a "Cellular Telephone Device" in one embodiment—is not "handheld" as recited in claim 1 because, the Board found, Liebermann's device is sized small enough to be used while being held. Appx13-15.

***Second***, the Board rejected GTP's argument that Liebermann fails to teach or suggest cameras with "non-overlapping fields of view" or one camera "oriented to view an object other than the user" as recited in claim 1 because, the Board found, Liebermann's "non-overlapping camera angles" "result in non-overlapping fields of view." Appx15-16; Appx22-23; Appx37-38. The Board also observed that claim 1 is a device claim, Liebermann's apparatus is capable of viewing an object other than the user, and GTP provided no contrary evidence or explanation. Appx15-16.

***Third***, the Board rejected GTP's argument that Liebermann's portable transmitter/receiver is a specialized telephone for the deaf and thus is not a "mobile phone" as recited in dependent claim 2. Appx17. Because the "mobile phone" includes devices for deaf persons, Appx12, the Board found Liebermann's device teaches the limitation, Appx17. The Board further observed that Liebermann expressly refers to its device as a portable, "cellular telephone device" for deaf persons. *Id.*; Appx23.

***Fourth***, with respect to the obviousness determinations for claims 6-8, the Board rejected GTP's argument that neither Liebermann nor Sears are analogous art. The Board found both references are within the field of endeavor of the claimed invention (input devices for optically sensing a human input from human positions or orientations), and reasonably pertinent to the problem to be solved by the '924 Patent (optically sensing human positions or orientations and performing a function based on the sensing). Appx18-22; Appx23-26.

***Fifth***, with respect to representative claim 6, the Board found Liebermann does not *require* a "central processing facility" and thus rejected GTP's argument that moving Liebermann's processing from a "central processing facility" to on board the portable transmitter/receiver

14

would be "untenable" and "violate Liebermann's principle of operation." Appx27-29. And because Liebermann's distributed processing architecture was one well-known processing architecture, the Board agreed with the Examiner that it would have been obvious to substitute another well-known architecture (like Sears's on-board computer/processor) with predictable results. Appx29-35.

**Sixth**, the Board rejected GTP's argument with respect to claim 7 as improperly attacking Sears for failing to disclose facial expressions when the Examiner relied on Liebermann for that limitation. Appx37.

**Seventh**, for claim 8, the Board found GTP did not dispute Liebermann's camera can "determine at least one of the position[s] and the orientation of the object" as claimed. Appx38. Instead, GTP argued Liebermann's camera is not "oriented to view an object other than the user" as recited in claim 1, an argument the Board rejected because it found Liebermann's device would have been capable of performing the claimed "determine" function, which is all that is required for a device claim. Appx15-16; Appx37-38.

**Finally**, the Board rejected GTP's argument that the reexamination was improper. The Board first rejected GTP's argument

that the Board lacks jurisdiction to conduct a reexamination of non-amended claims of an expired patent. The Board explained that a request for reexamination may occur at any time during the patent's enforceability, and this Court has frequently reviewed Board decisions where a patent under reexamination has expired because patentees can still allege infringement and seek damages after a patent expires. Appx38-41. The Board then rejected GTP's argument that the reexamination request did not present a substantial new question of patentability because Liebermann and Sears provide key teachings missing from the original prosecution. Appx41-42.

## III.  SUMMARY OF THE ARGUMENT

The Board properly determined Liebermann anticipates or renders obvious claims 1 and 2. Regarding claim 1, GTP challenges the Board's finding that Liebermann is analogous art, the Board's construction of "handheld device," and the Board's findings that Liebermann's cellular telephone device comprising two cameras with non-overlapping camera angles meets the "handheld" and first and second cameras having "non-overlapping fields of view" limitations. GTP also challenges the alternative determination that including a "second camera" would have

16

been obvious. Regarding claim 2, GTP challenges the Board's construction of "mobile phone" and the Board's finding that Liebermann's "cellular telephone" is a "mobile phone." GTP's arguments fail to show error in the Board's decision.

First, the Board rightly found Liebermann is analogous art because it is both in the same field of endeavor (input devices for optically sensing a human input from human positions or orientations), and reasonably pertinent to the problem to be solved by the '924 Patent (optically sensing human positions or orientations and performing a function based on the sensing). The Board rightly rejected GTP's attempts to narrowly define the analogous art inquiries as inconsistent with Liebermann's and the '924 Patent's disclosures.

Second, the Board correctly construed "handheld device" in claim 1 and "mobile device" in claim 2. The Board correctly construed "handheld device" to be a size restriction—as GTP advocated before the Board—and not a limitation on *how* the device is, or how a designer *intends* it be, used. The Board also correctly construed "mobile phone" to include mobile phones for the hearing impaired because nothing in the intrinsic evidence supports excluding those devices.

17

Third, under its correct constructions, the Board rightly found that Liebermann discloses the limitations GTP challenges on appeal: the "handheld device" and cameras with "non-overlapping fields of view" limitations in claim 1 and the "mobile phone" limitation in claim 2. Specifically, Liebermann's "cellular telephone device" is portable and small enough to be held in a user's hands (or one hand) while being used and comprises two cameras with non-overlapping camera angles. The Board alternatively determined claim 1 would have been obvious, finding a skilled artisan would have been motivated to include a second camera to improve image gathering, communication, and operational efficiency.

The Board also properly determined claims 6-8 would have been obvious over Liebermann in view of Sears. GTP fails to show error in any of the Board's findings and improperly asks this Court to reweigh the evidence. First, for reasons similar to its Liebermann analysis, the Board rightly found Sears's reading device that detects command gestures using cameras is in the same field of endeavor and reasonably pertinent to the problem to be solved by the '924 Patent.

Second, substantial evidence, including an expert declaration GTP does not challenge, supports the Board's finding regarding claim 6 that

18

it would have been obvious to substitute on-board computer processing into Liebermann's device to control functions based on camera input in place of off-board processing. These were art-recognized equivalents at the time of the alleged invention of the '924 Patent, and the simple substitution would have provided predictable results of decreased processing time and increased functionality and efficiency.

Third, GTP does not contest the Board's findings that Liebermann is capable of determining either a "facial expression" as recited in claim 7 or an object's "position" or "orientation" as recited in claim 8. For claim 7, GTP instead improperly argues that *Sears* fails to teach the limitation. For claim 8, GTP argues that Liebermann's example shows a user wearing "gloves" and the camera is thus not viewing "an object other than the user" as recited in claim 1, which is the wrong inquiry for the device claims at issue because it ignores the capability of Liebermann's device.

Finally, the Board rightly determined the reexamination should not be vacated. The Board properly found Liebermann raises a substantial new question of patentability because it teaches key features not present in prior art cited in the original prosecution of the '924 Patent. And the

Board correctly decided that the USPTO has the authority to reexamine an expired patent like the '924 Patent during its period of enforceability.

For these reasons, the Board's decision should be affirmed.

## IV.   ARGUMENT

### A.    Standard of Review

GTP bears the burden of showing that the Board committed reversible error. *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004).

Claim construction is a question of law that may include underlying factfinding related to extrinsic evidence. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015). Obviousness is a legal question based on underlying findings of fact, including what the prior art teaches, the presence of a motivation to combine references, and whether there is a reasonable expectation of success. *In re Gartside*, 203 F.3d 1305, 1316, 1319 (Fed. Cir. 2000); *PAR Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1196 (Fed. Cir. 2014) (citation omitted). Whether a reference qualifies as analogous prior art is also a question of fact. *Airbus S.A.S. v. Firepass Corp.*, 941 F.3d 1374, 1379 (Fed. Cir. 2019). The ultimate question of whether a reexamination is based on a substantial new

question of patentability is a question of law. *In re Swanson*, 540 F.3d 1368, 1381 (Fed. Cir. 2008).

This Court reviews the Board's legal conclusions de novo and its factual findings for substantial evidence. 5 U.S.C. § 706(2)(E); *Gartside*, 203 F.3d at 1315. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where two different conclusions may be warranted based on the evidence of record, the Board's decision to favor one conclusion over the other is the type of decision that must be sustained by this court as supported by substantial evidence." *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 970 (Fed. Cir. 2007) (citing *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002)).

Finally, whether the Board has jurisdiction to decide patentability of claims is a legal question this Court reviews de novo. *See Gartside*, 203 F.3d at 1315.

**B.    Substantial Evidence Supports the Board's Determinations That Claims 1 and 2 Are Anticipated By, or Would Have Been Obvious Over, Liebermann**

The Board correctly affirmed the Examiner's finding that Liebermann anticipates or renders obvious claims 1-5 and 13. Appx12-23; Appx913-921; Appx930-943; Appx1053-1067. GTP does not contest the Board's designation of claim 1 as representative of claims 3-5 and 13 or its observation that GTP did not separately argue any claims except claims 1 and 2. Appx3; Appx13-17; *see also* Br. 60. Therefore, the Director likewise focuses on claims 1 and 2.

The Board first correctly construed "handheld device" in claim 1 "as a size requirement that the device [is] small enough to be used while being held in the hand or hands." Appx9. The Board also correctly construed "mobile phone" in claim 2 as inclusive of mobile phones for the hearing impaired. Appx12.

Under its constructions, the Board and Examiner properly found that Liebermann teaches or renders obvious each of the limitations of claims 1 and 2. As the Examiner found, Liebermann discloses a handheld device (cellular telephone) comprising a housing, a computer equipped with software within the housing, a first camera with an output, and a

22

second camera with an output, wherein the computer can "perform a control function of the handheld device" based on the first or second camera outputs, as recited in claim 1. Appx913-918 (citing Appx1247(Title, Abstract); Appx1253(Fig. 6); Appx1265(4:20-21); Appx1265-1266(4:60-5:11); Appx1266(5:62-6:10, 6:36-62); Appx1267(7:18-48); Appx1268(9:28-30); Appx1269-1270(12:40-13:21); Appx1270(cls. 1, 3, 12); Appx384-386; Appx389-397); *see also* Appx930-937; Appx13-16. The Board and the Examiner also rightly found that Liebermann teaches that the cameras can have non-overlapping camera angles, which a skilled artisan would understand to mean "non-overlapping fields of view" as recited in claim 1. Appx15-16; Appx916-917 (citing Appx1269-1270(12:40-13:20)); Appx936-937. The Examiner alternatively determined the "second camera" limitation as recited in representative claim 1 would have been obvious because a person of ordinary skill in the art would have been motivated to incorporate a "second camera" to improve image gathering, communication, and the device's efficiency. Appx917-918 (citing Appx1270(13:4-8); Appx384-386); *see also* Appx22-23. This addition would be using a known technique to improve a similar device in the same way. Appx917-918. The Board and

the Examiner also rightly found Liebermann's portable cellular telephone device for deaf persons that communicates through a network is a "mobile phone" as recited in claim 2. Appx17.

GTP makes five arguments challenging the Board's determinations that claims 1 and 2 are anticipated by or obvious over Liebermann: (1) Liebermann is non-analogous art; (2) the Board incorrectly construed "handheld device" in claim 1; (3) Liebermann's "cellular telephone" is not "handheld" under GTP's proffered construction; (4) Liebermann fails to teach or disclose the "first and second cameras include non-overlapping fields of view" limitation; and (5) the Board incorrectly construed "mobile phone" in claim 2 to be inclusive of mobile phones for the hearing impaired like Liebermann's "cellular telephone." Each of GTP's arguments lacks merit.

### 1. Substantial evidence supports the Board's finding that Liebermann is analogous art.

Prior art is analogous if it (1) "is from the same field of endeavor," or (2) "reasonably pertinent to the particular problem with which the inventor is involved." *In re Bigio*, 381 F.3d 1320, 1325 (Fed. Cir. 2004). GTP argues that Liebermann is not analogous art under both prongs of this test and therefore cannot be used in any obviousness rejection for the

24

'924 Patent. Br. 34-38. Substantial evidence, however, supports the Board's findings that Liebermann is analogous art under either prong.

### a. Liebermann is analogous art under the field-of-endeavor prong.

The Board correctly found that Liebermann is in the same field of endeavor as the '924 Patent and is therefore analogous art. Specifically, the Board found that the '924 Patent's field of endeavor is "input devices for optically sensing a human input from human positions or orientations." Appx20; *see also* Appx1068 (Examiner making similar finding); Appx7 (Board adopting Examiner's findings). That finding is supported by the patent's broad definition of its "Field of the Invention" as including "simple input devices for computers . . . operating by optically sensing human input to a display screen or other object and/or the sensing of human positions or orientations." Appx19 (citing Appx164(2:7-11)). The title of and figures disclosed in the '924 Patent are also consistent with the Board's definition of the field of endeavor. *See, e.g.*, Appx140 (Title, "Camera Based Sensing in . . . Devices"); Appx151-162(Figs. 10A, 11A, 11B, 12, 13, 14A, 15, 17B) (each depicting non-handheld devices for sensing human input or position). The Board found Liebermann falls within the '924 Patent's field of endeavor, even if

25

directed at a more specific area of optically sensing signing motions for deaf persons. Appx19-20 (citing Appx164(2:7-11); Appx1247(Abstract); Appx1265(3:11-13, 3:26-30)).

GTP does not dispute that Liebermann is analogous art under the Board's definition of the field of endeavor in the '924 Patent and in Liebermann. Instead, GTP offers two arguments for why the Board's characterization of the field of endeavor is wrong, both of which fail.

*First*, GTP attempts to narrow the '924 Patent's field to "controlling functions of handheld devices using images captured by the handheld devices" by relying only on particular "handheld" embodiments. Br. 36-37. The proper field-of-endeavor inquiry, however, considers the patent's full disclosure, not select embodiments. *Bigio*, 381 F.3d at 1326. And by GTP's own admission before the Board, the '924 Patent's disclosure is *not* limited to handheld devices. *See* Appx980-981; Appx1105 ("the '924 Patent discloses different embodiments," some of which are "non-handheld"). As noted above, the '924 Patent's disclosure as a whole instead describes its field as one consistent with the Board's finding: optically sensing a human input from human positions or orientations. *See, e.g.*, Appx140 (Title); Appx164(2:7-11); Appx151-162(Figs. 10A, 11A,

11B, 12, 13, 14A, 15, 17B); *see also In re Wood*, 599 F.2d 1032, 1036 (CCPA 1979) (relying on specification's statements in Background of Invention section to define the field of endeavor).

**Second**, GTP argues Liebermann's field must be limited to "phones for the deaf," which "do not belong" in GTP's (incorrect) proffered field for the '924 Patent because the '924 Patent does not mention "deaf" or related words. Br. 35-37. GTP's conclusory assertion that "[p]hones for the deaf" fall outside its proffered "handheld device" field is attorney argument not entitled to any weight. *Estee Lauder, Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 595 (Fed. Cir. 1997). And even under GTP's proffered field—"controlling functions of handheld devices using images captured by the handheld devices" (Br. 36-37)—Liebermann is analogous because it discloses controlling functions using images captured by a handheld device. *See* §§ IV.B.2-IV.B.3 below.

### b. Liebermann is analogous art under the reasonably-pertinent prong.

The Board also rightly found that Liebermann is analogous art as it relates to a problem the '924 Patent is trying to solve. Contrary to GTP's allegation that the Board "did not even identify the problem being solved by Liebermann," Br. 37, the Board found Liebermann is

27

reasonably pertinent to the problem in the '924 Patent: "optically sensing human positions or orientations" and performing a function based on the sensing. Appx21 (referencing Appx19-20); *see also* Appx1068 (Examiner finding problem being solved as "embodiments for improving the sensing of objects for displays and control purposes"); Appx7 (Board adopting Examiner's findings). More specifically, the Board found "Liebermann is directed to 'an input device for optically sensing human positions or orientations,'" and discloses using the "output of the sensing" to control functionality of a device. Appx21 (referencing Appx19 (citing Appx1265(3:11-13)) and Appx20 (citing Appx1265(3:26-30)) (discussing an apparatus for "observing and digitizing the signing motions" for "deaf persons" to "communicate by signing").

GTP does not engage with the Board's findings. Instead, it argues Liebermann is not related to the problem in the '924 Patent of "performing a function based on a camera output" because Liebermann relates to "deaf persons trying to communicate." Br. 38. But, as the Board found, Liebermann *is* related because it uses cameras to sense human sign language to control the output of translating the motions into words and phrases, i.e., performs a function based on a camera output. Appx21;

28

*see also* Appx19-20. GTP provides no explanation why Liebermann's teachings regarding deaf communication brings it outside the broad problem to which the Board found the '924 Patent relates—a finding supported by substantial evidence.

> **2.    The Board correctly construed "handheld device" in claim 1 as limiting the device's size instead of how it is used.**

The Board correctly construed "handheld device" according to its plain and ordinary meaning: "a size requirement that the device [be] small enough to be used while being held in the hand or hands." Appx9. In fact, this is consistent with the meaning GTP advanced before the Board: "the preamble of claim 1 places size requirements/restrictions on the claimed components." Appx982. In construing the term, the Board considered a common dictionary definition of handheld, which it found to be consistent with GTP's proposed construction. Appx9; *see also In re CSB-Sys. Int'l, Inc.*, 832 F.3d 1335, 1341 (Fed. Cir. 2016) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-15 (Fed. Cir. 2005) (en banc)) (during reexamination of an expired patent, claim terms are given their ordinary and customary meaning to a skilled artisan at the time of the invention).

GTP argues that the term "handheld" also requires that the device is "designed for operation by a user while being held in at least one of the user's hands." Br. 12. But the Board properly rejected that construction. Appx14. GTP's proffered construction improperly attempts to read in limitations from the specification, improperly defines the device claim limitations by how the device is used, and is inconsistent with how a skilled artisan would understand the term.

GTP first argues "handheld device" is implicitly redefined in the specification by "repeatedly, consistently, and exclusively" showing a device being held when used, relying on discussions of a "cell phone" and "TV remote control" and figures depicting a hand holding a device. Br. 12-16. But an "'implied' redefinition [of a term] must be so clear that it equates to an explicit one." *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1368 (Fed. Cir. 2012). And this Court has cautioned that "limitations are not to be read into the claims from the specification." *In re Van Geuns*, 988 F.2d 1181, 1184 (Fed. Cir. 1993); *see also Markman v. Westview lnsts., Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc).

Even a cursory review of the specification belies GTP's assertions. The specification uses broad, open language when describing handheld

devices: "such as a cell phone **or whatever**." Appx169(12:63-64) (emphasis added). Indeed, although GTP points to Figure 18 as an example of a "handheld device" "designed for operation by a user while being held in at least one of the user's hands," the "hand held computer 1901" (Appx176(25:40)) in Figure 18 is **not** in a user's hand:



Br. 14-15 (citing Appx163) (excerption and annotations by GTP). While the handheld device in Figure 18 is not in a user's hands, it **does** show the size relationship between the device and a user's finger. Thus, the ordinary meaning of "handheld" places a size requirement or restriction that the device be small enough to be used while held, just as GTP proposed and the Board adopted. Appx982; Appx9.

GTP next argues "handheld device" still somehow requires more— that the construction should account for how the device *is used* or how a

designer *intends* a device be used. Br. 12; Br. 17. That is improper. As device claims, the '924 Patent's claims "cover what a device is, not what a device does" or how it is used. *HP v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990); *see also Edgewell Pers. Care Brands, LLC v. Munchkin, Inc.*, 998 F.3d 917, 921 (Fed. Cir. 2021). Moreover, the specification provides no indication for how to distinguish a device "designed for operation by a user while being held" from one not so "designed"—be it by shape, material, or some other variable. GTP's construction would require inquiring into whether a device's creator intended a device be held in a user's hand when used or assessing how a user actually uses the device, which is improper. *Edgewell*, 998 F.2d at 921.[4]

Finally, with respect to extrinsic evidence, GTP alleges "the Board inexplicably selected a dictionary from 1983, when handheld devices with

---

[4] Similarly, GTP asserts that something being handheld "does not happen by chance; it is <u>designed</u> as such." Br. 17 (emphasis original). It is unclear why a "device small enough to be used while being held in the hand or hands" (as the Board construed "handheld") is not "designed as such" except if one improperly reads "handheld" as requiring unclaimed, undisclosed "designs" or imposes a restriction on how the device is used. *See Edgewell*, 998 F.2d at 921.

computers (e.g., ordinary cellphones) were much less prevalent," and appears to fault the Board for not instead relying on Merriam Webster's definition. Br. 16-17. But GTP never provided or relied on Merriam Webster's definition before the Board. *See* Appx9 (noting GTP cites no "reference (e.g., dictionary) or case law" for a definition); *see also* Appx980-982 (GTP's Appeal Brief); Appx1104-1107 (GTP's Reply Brief). Thus, GTP forfeited any reliance on that extrinsic evidence, *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006), and its attorney argument about which dictionary is more pertinent cannot supplant evidence, *Estee Lauder*, 129 F.3d at 595. It is also entirely appropriate for the Board, as it did here, to rely on a general dictionary definition of an ordinary word for guidance. Appx9; *Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343, 1348 (Fed. Cir. 2010) (citing *Phillips*, 415 F.3d at 1322-23). The Board's chosen dictionary definition comports with the '924 Patent and GTP's position before the Board that "handheld" imposes a size restriction and nothing more. Appx9; Appx982.

### 3. Liebermann's "cellular telephone device" meets the "handheld device" limitation of claim 1.

The Board rightly found that Liebermann's cellular telephone device is a "handheld device," as recited in claim 1, under either its proper

construction of "handheld" or GTP's proffered construction of the term to mean "designed" to be held in a hand while being operated. As the Board and Examiner found, Liebermann discloses a "portable transmitter/receiver telephone," including the "Cellular Telephone Device" in Figure 6. Appx9; Appx12-15; Appx914; Appx930-932; Appx1253(Fig. 6). This portable cell phone is "handheld" under the Board's construction, i.e., "small enough to be used while being held in the hand or hands." Appx9; Appx14-15. Indeed, as Liebermann teaches, its cellular device is "portable," "may be transported and communicate as a wireless remote or through a cellular telephone network," and has "a key pad 16 for dialing and other functions," Appx1266(5:62-6:2), all of which indicate its small, portable size. Substantial evidence therefore supports the Board's finding that Liebermann's device is a "handheld device" under its proper construction of the term.

The Board also found that Liebermann's device is a "handheld device" even under GTP's proffered construction of the term—which requires assessing how the device was designed to be used or how it is used—because Liebermann's Cellular Telephone Device is of a size that permits it to be held with one hand, while signing with the other hand.

34

Appx14. GTP argues that Liebermann's device is not "handheld" under its proffered construction because (1) Liebermann discloses the portable cellular telephone is "supported in a stable position" when used and human hands are not "a flat/stable surface"; and (2) Liebermann depicts a person signing using both hands and therefore not holding the device. Br. 20-24, 26.

The Board considered and properly rejected these arguments. Appx14-15. Specifically, the Board found Liebermann's device can be "held in one hand while signing with the other hand," and nothing about Liebermann's structure "precludes such single hand signing use." Appx14-15. Similarly, the Examiner found Liebermann "provides no teaching, requirement or suggestion that both hands are always required for signing" as evidenced by Liebermann's Figures 14A/B showing images taken by the device of only one hand. Appx932; Appx1261 (Figs. 14A-B). Moreover, the Examiner found a skilled artisan would recognize "a cellular telephone" (as in Liebermann) "as a handheld mobile radiotelephone." Appx932. GTP's argument that there is "no indication" the user is holding the phone when imaging only one hand (Br. 24), that "[n]owhere in Liebermann is the 'portable transmitter/receiver' used by

a person holding it" (Br. 26),[5] and that Liebermann's device must rest on a "flat/stable surface" (Br. 23) fails to grapple with the Board's/Examiner's findings regarding Liebermann as a whole and is little more than attorney argument entitled to no weight. *See In re Uhlig*, 376 F.2d 320, 323 (C.C.P.A. 1967); *Estee Lauder*, 129 F.3d at 595.

Finally, GTP argues that Liebermann never discloses its portable device "is small enough to be held in a user's hand," "Liebermann never discloses the dimensions or weight" of its portable device, Figure 6 is "without any measurements and without a reference item of known size" making it "impossible to determine the dimensions of Liebermann's" portable device, and the Board's finding "is pure speculation." Br. 24-25. GTP did not make these arguments before the Board and has thus forfeited them. *SmithKline*, 439 F.3d at 1319. Nevertheless, GTP incorrectly discounts the Board's findings about the Liebermann device's portability and handheld size. Appx14-15. GTP also ignores Liebermann itself, which teaches the device "may be transported and communicate as

---

[5] GTP's argument requiring user action to meet the device claim limitation "handheld device" further demonstrates its construction of the term is wrong. *See* § IV.B.2 above

a wireless remote." Appx1266(5:62-6:2). The description of the device as "a wireless remote" is akin to a "TV remote control" that GTP admits is a "handheld device." Br. 12-13. Moreover, it is common knowledge that a portable cellular telephone like Liebermann's with a keypad—*i.e.*, an array of buttons that are pressed by fingers and *do* provide a frame of reference—is small enough to be used while being held in the hands. *See King v. Gallun*, 109 U.S. 99, 101 (1883) ("In deciding whether the patent covers an article . . . we are not required to shut our eyes to matters of common knowledge, or things in common use"); *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1534 (Fed. Cir. 1987) ("A patent need not teach, and preferably omits, what is well known in the art"). GTP points to nothing that would suggest otherwise.

### 4.    Liebermann discloses or teaches the "first and second cameras" with "non-overlapping fields of view" limitation of claim 1.

The "handheld device" of independent claim 1 comprises two cameras: "a first camera oriented to view a user of the handheld device" and "a second camera oriented to view an object other than the user . . . wherein the first and second cameras include *non-overlapping fields of view*." Appx176(26:54-62) (emphasis added). GTP argues the plain

37

language of the claim requires two cameras that have zero overlap for their respective field of view. Br. 27. But even under this "zero overlap" construction, the Board found Liebermann discloses the limitation. Appx10; Appx15-16. The Board also adopted the Examiner's alternative determination that including a "second camera" on the device would have been obvious. Appx7; Appx917-918. Substantial evidence supports the Board's findings.

> **a.    Liebermann's "more than one camera" with non-overlapping camera angles meets the cameras with "non-overlapping fields of view" limitation.**

The Board found Liebermann meets this limitation because it "discloses 'more than one camera' may be utilized with each camera covering a separate angle, operating independently of the other(s), in which angle overlap may or may not be permitted." Appx16 (citing Appx916; Appx1270(13:4-20)). The Board found an ordinarily skilled artisan "would have understood non-overlapping camera angles to result in non-overlapping fields of view." Appx16; *see also* Appx916. Thus, Liebermann discloses this limitation under the "plain language" GTP argues the claim requires. Br. 27.

GTP raises several arguments that Liebermann fails to satisfy this limitation, but none show error in the Board's finding. ***First***, GTP argues that Liebermann does not disclose two cameras for its "portable transmitter/device" because the cited portion of Liebermann is restricted to non-handheld embodiments. Br. 27-28. GTP never raised this argument before the Board and it is therefore forfeited. *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020). Even if considered, GTP is wrong. Liebermann states: "[t]he illustrated embodiments all utilize a single video camera[]," but "[i]t may be desirable to utilize more than one camera . . . [with e]ach camera . . . covering a separate angle." Appx1270(13:2-15). Liebermann's "cellular telephone version" in Figure 6 is one such "embodiment" depicting a "single video camera" and it therefore may be "desirable," according to Liebermann, to use another. Appx1253.

***Second***, GTP repackages its incorrect claim construction argument that Liebermann is not "handheld," alleging that because it includes multiple cameras it must be stationary. Br. 28-29. But this argument improperly imposes a limitation on *how* the device is used or how a designer intends it to be used, contrary to the Board's correct plain and

ordinary construction of imposing a size limitation. *See* § IV.B.2 above. GTP's argument also ignores the Board's finding that Liebermann's device can be "held in one hand while signing with the other hand" and that nothing "precludes such single hand signing use." Appx14-15. That a user *may* be able to put the device down and move around, as GTP argues (Br. 28-29), does not mean the user must do so. And there is no reason including a second camera transforms the device from one that can be "held in one hand" or used for "single hand signing" as the Board found (Appx14-15) into one that cannot be so held or used.

***Third***, with respect to the limitation that the cameras have "non-overlapping fields of view," GTP argues that Liebermann's non-overlapping camera angles are not the same because it "is unclear and undisclosed" how "angle" may relate to "field of view." Br. 29-30. But the prior art does not need to use the same terminology to anticipate. *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009) (to anticipate, "the reference need not satisfy an *ipsissimis verbis* test"). Here, the Board found a skilled artisan "would have understood non-overlapping camera angles to result in non-overlapping fields of view." Appx16. And Liebermann's teaching that "[e]ach camera is *covering* a separate angle"

is substantial evidence supporting the Board's "field of view" finding. Appx1270(13:11) (emphasis added). GTP's attorney argument that the relationship between angles and fields of view "is unclear and undisclosed" is not evidence and cannot show the Board erred. *Estee Lauder*, 129 F.3d at 595. GTP also offers no evidence why or how a POSA would understand "non-overlapping angles" and "non-overlapping fields of view" differently from the Board's finding.

*Finally*, GTP imposes an additional functional requirement regarding *what* the cameras see when the device is used (an "object" and a "user"), and argues that Liebermann's two cameras with non-overlapping angles would be "oriented to view different, non-overlapping portions of the signing user." Br. 30-31. This additional functional requirement is an about-face from GTP's argument that the "plain language" of the claim only requires that the two cameras have zero overlap for their fields of view. Br. 27. It also fails to recognize that claim 1 is an apparatus claim, and apparatus claims "cover what a device is, not what a device does." *Bausch & Lomb*, 909 F.2d at 1468. As the Board correctly determined, a device need only be "capable of the function of being 'oriented to view an object other than the user'" to satisfy this

41

limitation. Appx16. GTP understood the limitation in the same way in district court litigation: "the claim clearly recites capability, not performance of a method step." Appx272. As GTP argued there, "[t]he two cameras are capable of viewing the user of the handheld device and an object other than the user of the device, respectively, ***because they have 'non-overlapping fields of view***.'"[6] Thus, the Board's finding that Liebermann discloses two cameras with non-overlapping fields of view capable of performing the claimed function—a finding supported by substantial evidence and one GTP does not challenge—is sufficient to meet the claim limitation. Appx15-16.

### b.    Alternatively, including a "second camera" would have been obvious.

GTP also fails to show error in the Board's and Examiner's alternative determination that including a "second camera" on the device, as recited in claim 1, would have been obvious. Br. 39-40; Appx917-918. The Board adopted the Examiner's findings that a person

---

[6] Pl. Gesture Tech. Partners, LLC's Reply Claim Construction Br. at 6, *Gesture Tech. Partners, LLC v. Huawei Device Co., Ltd. et al*, 2:21-cv-00040-JRG-RSP (ECF No. 72) (E.D. Tex. Sept. 8, 2021) (emphasis added).

of ordinary skill in the art would have been motivated to incorporate a second camera "to gather proper image information related to a user['s] various motion profiles" because Liebermann teaches a second camera allows tracking when the user is moving around the room. Appx7; Appx917-918 (citing Appx1270(13:4-8); Appx384-386); Appx22-23. Including a second camera would allow a user to "effectively communicat[e] in any environment independent of a user's movement, thereby increasing the operational efficiency of [the] handheld communication device." Appx917. In addition, as the Examiner found, including a second camera would be using a known technique to improve a similar device in the same way. Appx917-918 (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007)).

Before this Court, GTP argues that a modification that allows a user free movement would include movement where the device "is beyond the physical reach of the user" and the device would therefore not be "handheld" as required by claim 1. Br. 39-40. GTP never raised this argument before the Board and it is therefore forfeited. *See* Appx1004-

1005; *In re Google*, 980 F.3d at 863.[7] GTP's argument also fails on the merits because it is premised on its incorrect construction of "handheld device"—requiring assessing how the device was designed to be used or how it is used (i.e., requiring it be held when used)—which is wrong for the reasons discussed above. *See* § IV.B.2.

### 5. The Board correctly determined that Liebermann discloses a "mobile phone" as recited in claim 2.

#### a. The Board correctly construed "mobile phone" in claim 2 as inclusive of mobile phones for deaf users.

The Board correctly construed "mobile phone" to include "mobile phones for the hearing impaired," and correctly rejected GTP's argument that it must "exclude mobile phones for deaf persons." Appx12. An inventor who "chooses to be his own lexicographer and to give terms uncommon meanings . . . must set out his uncommon definition in some manner within the patent disclosure." *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). A "secretly held intended

---

[7] Before the Board, GTP argued a "modification" of Liebermann to include a second camera would not mean that camera is "oriented to view an object other than the user" as recited in claim 1. Appx1004-1005. The Board properly rejected this argument because, as explained above (§ IV.B.4.a), Liebermann is ***capable of*** performing the claimed function and therefore meets the limitation. Appx22.

meaning" cannot redefine a common term, *id.*; a definition "must be done with reasonable clarity, deliberateness, and precision," *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994) (holding a "calculator" is a "computer" even if considered a "limited function" computer).

The '924 Patent's specification provides no clear, deliberate, or precise definition of "mobile phone" or indication that the term excludes a mobile phone for the deaf. It also does not require voice calling or audio output features/capabilities as GTP argues, Br. 18-19, 33, as it describes a cell phone embodiment where "[o]ne function is just to acquire an image for transmission via for example the cell phones [sic] own connection." *See* Appx170(13:1-11); Appx12. The Board, citing prior art, also found that the ordinary meaning of "mobile phone" includes a "cellular telephone device" for the deaf. Appx12 (citing Appx1253(Fig. 6); Appx1266(5:62-63)).

None of GTP's arguments for its narrow construction show the Board erred. GTP argues "mobile phone" "necessarily includes" voice calling audio output features/capabilities and does not "include mobile phones for the deaf." Br. 18-19, 33. GTP also argues that, despite no description of either of these features/capabilities in the '924 Patent,

these are "fundamental and well-known features/capabilities." Br. 18. GTP further argues that because the '924 Patent's specification does not discuss deaf users, "mobile phone" must exclude mobile phones for deaf persons. Br. 18-19. The Board correctly rejected these arguments, explaining that nothing in the intrinsic or extrinsic evidence supports GTP's "myopic view that the term 'mobile phone' excludes mobile phones for deaf persons." Appx12; *see also In re Paulsen*, 30 F.3d at 1480. The Board also rightly found GTP's arguments relied on attorney argument, Appx12, which is not evidence and cannot show the Board erred. *Estee Lauder*, 129 F.3d at 595.

> **b.** **Substantial evidence supports the Board's finding that Liebermann's "cellular telephone device" meets the "mobile phone" limitation of claim 2.**

The Board and Examiner correctly found Liebermann's "cellular telephone device" meets the "mobile phone" limitation recited in claim 2. Appx17; Appx919 (citing Appx1253(Fig. 6); Appx1265(4:20-21)); Appx937-938. The Board found that even GTP refers to Liebermann's cellular telephone as "portable." Appx17. Liebermann further describes its cellular telephone may include an antenna "so that it may be transported and communicate . . . through a cellular telephone network."

Appx1266(5:67-6:2). This substantial evidence supports the Board's finding that Liebermann teaches a "mobile phone."[8]

GTP does not dispute that Liebermann's portable/transmittable "cellular telephone" is "mobile" or a "phone." GTP instead relies on its incorrect construction that "mobile phone" requires undisclosed and unclaimed voice call and audio output functions/capabilities and that the term therefore excludes mobile devices for the deaf. Br. 32-34. For the reasons discussed above, *see* § IV.B.5.a, GTP's proffered construction is wrong. Under the proper construction of "mobile phone," substantial evidence supports the Board's finding that Liebermann's cellular phone meets the limitation.

---

[8] The Examiner also found Liebermann discloses its device can have a microphone and a speaker, *i.e.*, voice call and audio output functions/capabilities, for communicating when in near-proximity to a "normally hearing person." Appx938 (citing Appx1267(7:29-39)). GTP challenges this finding, arguing the speaker (audio output) GTP argues is required must more specifically be used for voice calling, thereby improperly imposing even more limitations on the generic "mobile phone." *See* § IV.B.5.a above.

47

### C. The Board Correctly Determined That Claims 6, 7, and 8 Would Have Been Obvious Over the Combination of Liebermann and Sears

The Board correctly affirmed the Examiner's rejection of claims 6-10 and 12 as obvious over Liebermann in view of Sears, and claims 11 and 14 as obvious over Liebermann in view of other prior art. GTP does not dispute the Board's designation of claim 6 as representative of claims 9 and 12, claim 8 as representative of claim 10, or its observation that GTP did not present separate arguments for any claims other than claims 6, 7, and 8. Appx3-6; *see also* Br. 60. Therefore, the Director likewise focuses on claims 6-8.

As the Board and Examiner rightly found, claims 6-8 would have been obvious over Liebermann in view of Sears. The Board and Examiner first found that Sears is analogous art to the '924 Patent because it is in the same field of endeavor (input devices for optically sensing a human input from human positions or orientations), and is reasonably pertinent to the problem to be solved by the '924 Patent (optically sensing human positions or orientations and performing a function based on the sensing). Appx24-26 (citing Appx1281(3:19-21, 4:3-7); Appx1273(Abstract); Appx1293(28:39-42)); Appx939-942; Appx944-946.

48

Regarding claim 6, the Examiner found that Liebermann discloses nearly all of the limitations of the claim, but does not expressly teach that its on-board computer itself performs a control function. Appx923; Appx950-951. The Examiner found, however, that Liebermann's device could be modified to include an on-board computer to control functions based on the camera input rather than using an off-site "central processing facility." Appx923-925; Appx950-952. Relying on Sears and an expert declaration, the Examiner found that off-site and on-board processing were well-known, art-recognized equivalents, and a simple substitution to include an on-board processing in Liebermann could be done with predictable results. Appx923-925 (citing Appx1282(5:2-12, 5:35-44, 5:51-61); Appx1283(7:1-23); Appx1288(18:9-18); Appx445-448); Appx950-952. Moreover, the Examiner found a person of ordinary skill would have been motivated to make such a simple substitution onto a device like Liebermann's with a reasonable expectation of success. Appx924-925. The Board adopted the Examiner's findings and reasoning. App7; *see also* Appx33-35.

Regarding claims 7 and 8, the Board and Examiner correctly found that Liebermann's device is capable of performing the claimed

functionality of determining a facial expression (claim 7) and determining the position and orientation of the object (claim 8). Appx37-38; Appx922-923 (citing, e.g., Appx1267(7:44-48); Appx1268(9:28-30); Appx1269-1270(12:53-13:3); Appx1270(cl. 3)).

GTP makes four arguments challenging the Board's and Examiner's findings underlying their obviousness determination for claims 6-8: (1) Sears is not analogous art; (2) the combination of Liebermann and Sears for dependent claim 6 relied on impermissible hindsight, lacks rational underpinnings, and is more than a simple substitution; (3) the combination of Liebermann and Sears does not teach the "operable to determine a facial expression" limitation of claim 7; and (4) the combination of Liebermann and Sears does not teach the "computer is adapted to determine at least one of the position and the orientation of the object" limitation of claim 8. Each of GTP's arguments lacks merit.

### 1.    Substantial evidence supports the Board's finding that Sears is analogous art.

GTP argues Sears is non-analogous art and therefore cannot be used in an obviousness rejection. Br. 41-45. Substantial evidence, however, supports the Board's findings that Sears is analogous art to the

'924 Patent because (1) it is within the same field of endeavor (Appx20; Appx24-25); and (2) it is reasonably pertinent to the problem with which the '924 Patent is involved (Appx25-26).

### a. Sears is analogous art under the field-of-endeavor prong.

As explained above, substantial evidence supports the Board's finding that the '924 Patent's field is "input devices for optically sensing a human input from human positions or orientations." *See* § IV.B.1.a; *see also* Appx20; Appx24-25 (citing Appx164(2:7-11)). GTP does not dispute that Sears is analogous art under the Board's definition of the field-of-endeavor.

GTP instead attempts to pigeonhole Sears's field of endeavor to "electronic reading machines" and then argues it falls outside of the '924 Patent's field of endeavor that GTP tries to limit to "handheld devices." Br. 42-43. For the same reasons discussed above with respect to Liebermann, GTP's narrow focus on select "handheld" embodiments instead of the '924 Patent's full disclosure is improper, incorrect, and inconsistent with GTP's past positions. *See* § IV.B.1.a. GTP also provides no reasoning or evidence for how Sears falls outside of GTP's proffered (and incorrect) "handheld" field. *See* Br. 42-43. Indeed, the Board found

Sears controls functions of a handheld device using images it captures. Appx24-25 (citing Appx1281(3:19-21, 4:3-7); Appx1273(Abstract); Appx1293(28:39-42)). Substantial evidence supports the Board's findings that Sears is within the same field of endeavor as the '924 Patent, and therefore is analogous art.

> **b.    Sears is analogous art under the reasonably-pertinent prong.**

Substantial evidence also supports the Board's finding that Sears is reasonably pertinent to the problem to be solved by the '924 Patent. To start, GTP is wrong that the Board "did not even identify the problem being solved by Sears." Br. 43. The Board found Sears is "reasonably pertinent to the particular problem with which the inventor [of the '924 Patent] is involved," i.e., "optically sensing human positions or orientations" and then performing a function based on the sensing. Appx26; *see also* Appx24-25. The Board also adopted the Examiner's findings, Appx7, that (1) the problem being solved by the '924 Patent is providing "embodiments for improving the sensing of objects for displays and control purposes" (Appx1068); and (2) Sears is pertinent to this problem because it teaches a system for capturing, digitizing, and processing image data to convert it into text or capturing hand motions

to determine which text to read (Appx1069 (citing, e.g., Appx1282(5:35-6:10))). Moreover, the Board found Sears discloses "an object of the invention" is "to specify control system parameters through manual gestures" and also discloses optically sensing and capturing hand gestures to control functions. Appx25 (citing Appx1281(3:19-21, 4:3-7); Appx1273(Abstract); Appx1293(28:39-42)).

GTP does not dispute that Sears is "reasonably pertinent" to the problem in the '924 Patent under the Board's definition of the problem. Instead, GTP argues the Board's definition "is far too generic a problem statement," and again tries to limit the '924 Patent's problem to "handheld devices." Br. 44 (defining the problem as "determining touchless user input commands to handheld devices and controlling functions within handheld devices"). But the '924 Patent describes the problem it is attempting to resolve nearly identically to the Board's finding: "optically sensing a human input to display screen or other object and/or the sensing of human positions or orientations." Appx164(2:7-11). The '924 Patent further states it "provide[s] further useful embodiments for improving the sensing of objects," and that it discloses "new applications in a variety of fields," Appx164(2:14-24), which are not

limited to the handheld environment. *See* § IV.B.1.a above.[9] Accordingly, the Board's characterization of the problem is consistent with the '924 Patent's disclosure, and substantial evidence supports the Board's finding that Sears is reasonably pertinent to that problem.

### 2. Claim 6 would have been obvious over Liebermann and Sears.

The Board correctly determined that claim 6 would have been obvious over Liebermann and Sears. Claim 6 depends on independent claim 1 and requires that the computer of the handheld device of claim 1 be "operable to determine a gesture." In other words, the computer on the handheld device itself (hardware/software) must be able to perform the function (i.e., on board or locally). Appx923; Br. 45-46.

The Examiner found that, before the '924 Patent's invention date, using on-board hardware/software for controlling functionality of a device was an art-recognized equivalent to using off-board hardware/software

---

[9] The Board alternatively found Sears "reasonably pertinent to the particular problem" the '924 Patent's inventor faced even if limited to the handheld environment. Appx26. As the Board found, Sears discloses using gesture commands to input data or capture images with handheld camera devices. Appx25 (citing Appx1273(Abstract); Appx1281(4:3-7); Appx1293(28:39-42)).

separate from the device. Appx924-925 (citing Appx445-448). Sears, for example, teaches an on-board hardware/software configuration for an image-capturing and processing device, while Liebermann teaches an off-board configuration for its image-capturing and processing device. Appx924-925; Appx950. Because of the art-recognized equivalence, the Examiner found it would have been obvious to one of ordinary skill in the art to substitute out Liebermann's off-board hardware/software computer configuration for an on-board configuration as in Sears. Appx924-925; Appx950-952. The Examiner further found this to be a simple substitution and that including the hardware/software on board Liebermann's device's computer "would obtain predictable results" of "decreas[ing] processing time and provid[ing] for a more real-time processing environment, thus, increasing the functionality and operational efficiency of the handheld device." Appx925; Appx951-952.[10] The Examiner further relied on an expert declaration, which explained a

---

[10] The Examiner alternatively found a person of ordinary skill in the art would have been motivated to incorporate the hardware/software combination on the device's computer because Sears expressly teaches the on-board configuration saves time. Appx924 (citing Appx1280(2:6-7 and Appx445-448)). The Board did not address this alternative finding because it found the simple substitution analysis determinative. Appx29.

skilled artisan would have been motivated to include an on-board computer to perform local processing and gesture recognition in Liebermann because integrated devices were desirable and it "could be implemented using known software based on existing hardware." Appx924-925 (citing Appx445-448). The Board agreed with the Examiner's reasoning and that of the expert witness. Appx33-35 (citing Appx27-29; Appx445-448). The Board noted that GTP did not address the expert's opinions. Appx33. Accordingly, substantial evidence supports the Board's determinations that including on-board software/hardware configuration in Liebermann would have been obvious.

GTP argues the Examiner and the Board erred for three reasons: (1) that their findings were based on impermissible hindsight and the combination of Liebermann and Sears would change Liebermann's principle of operation (Br. 46-52); (2) that the combination is not a simple substitution of one known element for another (Br. 52-55); and (3) that the combination is "not rational" (Br. 55-56). Each argument improperly asks this Court to reweigh the evidence before the Board. *See Impax Labs. Inc. v. Lannett Holdings Inc.*, 893 F.3d 1372, 1382 (Fed. Cir. 2018) ("We do not and should not reweigh evidence or make factual findings

anew on appeal"); *see also In re Inland Steel Co.*, 265 F.3d 1354, 1366 (Fed. Cir. 2001) ("[W]e give the Board broad deference in its weighing of the evidence before it"). And each argument fails to show error in the Board's findings.

***First***, GTP argues that the combination of Liebermann and Sears that moves the computer hardware/software on board Liebermann's device in "untenable" and "far too drastic" a modification that "would change Liebermann's principle of operation" because Liebermann allegedly requires its processing of gestures via an off-board "central processing facility" and moving it on-board would "jeopardiz[e] its portability." Br. 46-53. But "[w]hat the prior art teaches . . . [is a] question[] of fact," *In re Berg*, 320 F.3d 1310, 1312 (Fed. Cir. 2003), and the Board rightly found Liebermann's "central processing facility" or "central station" "is an option . . . not a requirement" of Liebermann's claimed device, Appx28-29; Appx33-34.

The Board correctly found Liebermann's "central station" is optional because Liebermann's independent claim 12 recites a system that does not require a central station while claim 16, which depends on claim 12, does. Appx28-29. GTP argues claim differentiation is

inapplicable to understanding what prior art discloses, but it presents no principled reason why—claim differentiation is based on the understanding that "a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim." *Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004). When determining the scope and content of the prior art, the Board appropriately used the claim differentiation tool to determine what Liebermann teaches, a question of fact. *Berg*, 320 F.3d at 1312. Moreover, "[a] reference must be considered for everything that it teaches, not simply the described invention or a preferred embodiment." *In re Applied Materials, Inc.*, 692 F.3d 1289, 1298 (Fed. Cir. 2012). Liebermann's written description teaches a "***preferred form*** of the present invention includes a processing center . . . and the communications are conducted through this center." Appx1266(5:35-40) *see also* Appx946-948.[11] Thus, substantial evidence supports the Board's

---

[11] GTP cites this passage when arguing Liebermann's "central processing facility" is required, but it omits the "preferred form" language. Br.48.

finding that, although a "central station" is preferred in Liebermann, it is optional.

**Second**, GTP "disagrees" with the finding that moving the computer hardware/software on board Liebermann's device as taught by Sears would have been a simple substitution. Br.52-55. In part, GTP relies on its argument that Liebermann's "central processing facility" is "an immovable critical element," Br. 52-53, which is incorrect for the reasons discussed above.

Although GTP "disagrees" with the Boards' findings, GTP's additional arguments fail to show the Board's findings were unreasonable. GTP argues moving the hardware/software on board Liebermann's device would "jeopardiz[e] its portability" with "no guarantee" the substitution would have been successful and predictable. Br. 53-54. Similarly, GTP argues Sears's and Liebermann's devices "process[] different types and quantities of gestures" and therefore "require different processing power" with "no guarantee" that the processing power required for Liebermann "can be installed/executed locally" on Liebermann's device. Br. 54. Both of GTP's arguments overstate the obviousness threshold; "only a reasonable expectation of

success, not a guarantee, is needed." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1364 (Fed. Cir. 2007) (citing *In re O'Farrell*, 853 F.2d 894, 903 (Fed. Cir. 1988)) (affirming obviousness holding when the art provided a reasonable expectation of success for a substitution of elements)). And GTP's mere disagreement with the Board and Examiner's simple substitution findings does not show a lack of substantial evidence. *In re Jolley*, 308 F.3d at 1320.

Instead, substantial evidence supports the Board's findings. The Board and Examiner relied on the expert evidence to find the substitution—providing hardware/software on board Liebermann's computer—would be successful and provide predictable results including decreased processing time that increases the device's functionality and efficiency. Appx33 (citing Appx924-925 and Appx445-448). The Examiner made further detailed findings that Liebermann and Sears disclose devices with computers that translate/convert/process gesturing or motions into text, Sears's uses a local (on-board) hardware/software combination that provides faster real-time processing, and using a local hardware/software combination on Liebermann's on-board computer would have provided predictable results. Appx950-952.

GTP's attorney argument regarding a Pentium chip's processing capability and that the devices in the references would "require different processing power," Br. 54, is not evidence and cannot show the Board erred. *Estee Lauder*, 129 F.3d at 595. The Board found Sears teaches "using a Pentium processor for processing gesture-based visual inputs," found "the same class of processor" is in the '924 Patent's specification, and credited the Examiner's finding that a person of ordinary skill would recognize placing such a chip on Liebermann "would simply be engineering expediency" to provide a more desirable "highly-integrated" device. Appx34 (citing Appx1075-1076, Appx924, Appx447-448, and Appx165(3:33-34)).[12]

***Third***, GTP argues the combination of Liebermann and Sears is "not rational" because moving hardware/software on board "would unnecessarily complicate" software updates that would otherwise happen at Liebermann's "central processing facility." Br. 55-56. This attorney

---

[12] Additionally, the '924 Patent references only the Pentium processor and does not purport to have advanced processor technology, which further indicates it would have been well-understood to a skilled artisan what processor could be included on a device to process gesture-based visual inputs. *Cf. Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1358 (Fed. Cir. 2024).

61

argument again incorrectly presupposes Liebermann requires a "central processing facility." GTP also cites no evidence that this alleged "complication" would even occur, never mind be an impediment, and record evidence points in the opposite direction. *See, e.g.*, Appx1075-1076 (citing Appx445-447 (explaining "more integration in mobile computing is desired," "it was becoming 'more and more pervasive' to integrate 'personal computer technology into phones,'" and eliminating "an intervening network computer" provides conveniences) (citations omitted)); Appx1073-1075.

Accordingly, GTP fails to establish error in the Board's determination that including an on-board software/hardware configuration in Liebermann would have been obvious.

### 3. Liebermann teaches the "operable to determine a facial expression" limitation of claim 7.

Substantial evidence supports the Board's finding that Liebermann teaches the "operable to determine a facial expression" limitation of claim 7. As the Examiner found, Liebermann teaches using the device's camera to record "facial motions and expressions." Appx915 (citing, e.g., Appx1266(5:62-6:10) and Appx384-386); *see also* Appx922-923; Appx1076-1077. GTP does not contest these findings.

62

GTP instead argues "*Sears* is directed to OCR-based electronic reading machines" and appears to argue that the combination of Liebermann and Sears therefore cannot satisfy the limitation of claim 7. Br. 57. But the Examiner and Board relied on Liebermann for this limitation, and "[n]on-obviousness cannot be established by attacking references individually where the rejection is based upon the teachings of a combination of references." *In re Merck & Co., Inc.*, 800 F.2d 1091, 1097 (Fed. Cir. 1986). GTP's misplaced arguments should be rejected.

### 4. Liebermann teaches the "computer is adapted to determine at least one of the position and the orientation of the object" limitation of claim 8.

Substantial evidence supports the Board's finding that the combination of Liebermann and Sears teaches the "computer is adapted to determine at least one of the position and the orientation of the object" limitation of claim 8.[13] As the Board observed, GTP did not dispute that Liebermann can determine "at least one of the position and the orientation of the object." Appx38. Furthermore, as the Board found,

---

[13] The Board found claim 8 representative of claim 10, Appx4, a finding GTP does not challenge on appeal. Thus, GTP's one sentence argument about claim 10, Br. 59, is forfeited. *SmithKline*, 439 F.3d at 1319.

Liebermann's teaching of "more than one camera" with non-overlapping angles demonstrates that its device is capable of performing the claimed function, which is sufficient to meet this limitation. Appx38 (referencing Appx15-16); *see also* § IV.B.4.a above. GTP does not contest these findings.

GTP's argument instead rests on its incorrect position that the claim is limited by *what* the camera sees in the field of view of each camera when it's used. Br. 59. GTP's position in district court, however, was that cameras with non-overlapping views suffice to meet a limitation regarding what the cameras view because the claims recite capability and not method steps. *See* § IV.B.4.a above. This is consistent with how the Board viewed the limitation. Appx15-16; Appx38. And *what* the cameras view should be irrelevant; the '924 Patent's apparatus claims "cover what [the] device is"—a handheld device with two cameras each with non-overlapping fields of view—not what the device sees when it's used. *Bausch & Lomb*, 909 F.2d at 1468.

**D.    The Board Correctly Determined That the Reexamination Request Raised a Substantial New Question (SNQ) of Patentability**

GTP asserts that neither Liebermann nor Sears raise an SNQ because these references alone or in combination do not "disclose a handheld device with two cameras having non-overlapping fields of view" of claim 1. Br. 61. But as discussed above, the Board found Liebermann teaches or discloses these limitations. *See* §§ IV.B.2-4. Moreover, the reexamination order found Liebermann, which was not of record in the original prosecution, teaches or discloses these limitations, which were "key features missing from the prior art at the time of allowance." Appx800; Appx802-805. This is sufficient to show the prior art in the reexamination request raises a substantial new question of patentability, i.e., one the USPTO had not actually considered and decided on the merits during the original prosecution. *See In re Vivint, Inc.*, 14 F.4th 1342, 1349 (Fed. Cir. 2021).

**E.    GTP's Skeletal Challenge of The Board's Jurisdiction to Reexamine an Expired Patent is Wrong**

GTP's argument that the Board lacks jurisdiction over an expired patent in *ex parte* reexamination proceedings does not address any of the statutory, regulatory, or case law authorities the Board relied on to

support its jurisdiction to reexamine an expired patent such as GTP's '924 Patent. Appx40-41; *see* Br. 61-63. It instead relies exclusively on *dicta* in *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC,* 584 U.S. 325 (2018), Br. 61-63, a case that has nothing to do with *ex parte* reexamination. In fact, the Court emphasized "the narrowness" of its holding there, noting "[w]e address the constitutionality of inter partes review only." *Oil States*, 584 U.S. at 344. GTP thus misplaces its reliance on *Oil States* and its argument is meritless.

The Board provided various authorities to correctly hold it has jurisdiction over the expired '924 Patent. For example, the Board explained Section 302 permits a reexamination request "at any time . . . of any claim of a patent." Appx40 (citing 35 U.S.C. § 302). That statute's plain language is enough to support the Board's jurisdiction over GTP's patent. *See Thaler v. Vidal*, 43 F.4th 1207, 1213 (Fed. Cir. 2024) (quoting *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1749 (2020) ("when the meaning of the statute's terms is plain, our job is at an end")).

The Board further explained that, consistent with Section 302, the USPTO's regulation permits a reexamination request "at any time during the period of enforceability of a patent." Appx40 (quoting 37 C.F.R.

§ 1.510(a)). And that "period of enforceability" is enshrined in Section 286, as this Court has recognized: "an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286." *Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*, 655 F.3d 1291, 1299 (Fed. Cir. 2011). GTP's patent expired in July 2020, Appx38, is still in the six-year post-expiration period of enforceability, and is thus subject to reexamination. *See* 35 U.S.C. § 302; 37 C.F.R. § 1.510(a). Indeed, this Court has reviewed several Board decisions that stem from reexaminations of expired patents, and in none of those cases has this Court held the Board lacked jurisdiction. *See, e.g., In re Rambus, Inc.*, 753 F.3d 1253, 1256 (Fed. Cir. 2014); *In re CSB*, 832 F.3d at 1337; *In re Express Mobile, Inc.*, No. 2023-1076, 2024 WL 2747287, at *1 (Fed. Cir. May 29, 2024). GTP challenges none of that authority either.

Rather than engage with any of the Board's cited authority, GTP makes the unsupported argument that jurisdiction is extinguished when a patent expires "because the public franchise [that is the grant of a patent] no longer exists." Br. 62. This, GTP argues, means that the USPTO cannot "cancel or amend" GTP's expired patent claims, leaving

only Article III courts because those courts have "exclusive authority to govern claims for damages." Br. 62-63; Appx38-39. Paradoxically, GTP argues a patentee has rights to past damages under an expired patent (Br. 62); rights that are necessarily derived from the "public franchise" GTP says no longer exists after expiration, and rights GTP continues to assert in district court. Br. 1. Ultimately, GTP provides no support for why a franchisee who enjoys rights in an expired patent would no longer be subject to the jurisdiction of the agency granted authority to review the public franchise. 35 U.S.C § 302. GTP's '924 Patent is therefore subject to reexamination and GTP's skeletal argument to the contrary should be rejected.

## V.    CONCLUSION

GTP raises a litany of challenges, including attacking the Board's factual findings, which GTP fails to show are unreasonable, the Board's legal determinations, which GTP fails to show are incorrect, and the Board's authority, which GTP fails to show is lacking. The Board considered and addressed each of GTP's arguments, and the record and the law support the Board's conclusions. This Court should affirm.

Dated: September 4, 2024          Respectfully submitted,

                                  /s/ *Justin Bova*
                                  Farheena Y. Rasheed
                                  *Solicitor*

                                  Amy J. Nelson
                                  *Senior Counsel for Patent Policy and Litigation*

                                  Justin Bova
                                  Peter J. Sawert
                                  *Associate Solicitors*

                                  Office of the Solicitor
                                  U.S. Patent and Trademark Office
                                  Mail Stop 8, P.O. Box 1450
                                  Alexandria, Virginia 22313-1450
                                  (571) 272-9035

                                  *Attorneys for the Director of the United States Patent and Trademark Office*

# CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to Fed. Cir. R. 32(b) that the foregoing BRIEF FOR THE APPELLEE—DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE complies with the type-volume limitation required by the Court's rules. The total number of words in the foregoing brief, excluding the table of contents and the table of authorities, is 12,786 words as calculated using Microsoft Word® software program.

/s/ *Justin Bova*

JUSTIN BOVA
*Associate Solicitor*
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
(571) 272-9035